IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RICHARD KIRBY,

    Plaintiff,

v.    No. CIV 08-659 JCH/LFG

ROBERT EZELL, et al.,

    Defendants.

## MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDED DISPOSITION[1]

### Introduction

This is a *pro se, in forma pauperis* civil rights action brought under 42 U.S.C. § 1983 by Plaintiff Richard Kirby ("Kirby"). At the time he filed his complaint, Kirby was incarcerated at Torrance County Detention Center ("TCDF") in Estancia, New Mexico. Kirby is presently incarcerated at Lea County Correctional Facility ("LCCF") in Roswell, New Mexico.

Kirby's civil rights complaint, filed July 15, 2008 [Doc. 1] alleges several claims for denial of access to the courts. In an Order entered August 1, 2008 [Doc. 7], the Court denied Kirby's motion for an order granting him relief from alleged retaliation, but allowed him to amend his original complaint to add a count of retaliation.

---

[1] Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

1

Kirby's request for relief seeks "equipment to effectively listen and transcribe court hearings," legal research materials, "competent oversight that would assure NMCD policy and procedure compliance," and a monetary award of $6,500,00.00 "plus $4500 for every day of proven wrongful incarceration."[2] [Doc. 1, p. "5" or p. 8 of 10.]

## Procedural Background

On November 13, 2008, the Court conducted a *sua sponte* review of the complaint, in accordance with 28 U.S.C. § 1915(e)(2) to determine if any of the claims were subject to dismissal under Fed. R. Civ. P. 12(b)(6). [Doc. 14.] The Court determined that one of Kirby's three claims for denial of access to the courts could not survive[3] and allowed two other denial of access claims to proceed. The three claims that proceeded were: (1) denial of access to the courts based on allegations that Defendants Robert Ezell and Shannon McReynolds denied Kirby proper equipment to listen to his state court trial transcripts in violation of the Correction Department's policy; (2) denial of access to the courts based on Defendant Major Horton's alleged refusal to allow Kirby to take his legal files to a court hearing; and (3) retaliation by Grievance Officer David Brown for allegedly causing Kirby to be held in segregation because of his litigation activities. [Doc. 14, p. 2.] After the Court's initial analysis, the remaining Defendants were: Robert Ezell ("Ezell"), Shannon McReynolds ("McReynolds"), Defendant Major Horton ("Horton") and David Brown ("Brown").

---

[2] To the extent Kirby seeks to avoid further incarceration or to remove himself from prison, he must apply for a writ of *habeas corpus* in accordance with 28 U.S.C. § 2254 or 28 U.S.C. § 2241, should that route be available to him. The Court does not analyze any possible claim of wrongful incarceration in this lawsuit.

[3] The Court denied Kirby's allegation that during his appeal to the Court of Appeals for the Firth Circuit in a *coram nobis* proceedings Defendants Garner, Ezell, Doe, Heavington and Williams caused him to be transferred in violation of Rule 23(a) of the Fed. R. App. P. [Doc. 14, p. 2.] The Court also dismissed Janecka, Garner, Doe, Heavington and Williams as Defendants in this case. [Doc. 14, p. 3.]

The civil rights complaint also alleges that Defendants "held 42 pieces of legal mail addressed to counsels" in another federal case brought by Kirby, "CIV 04-844, Northern District of Texas Federal Court, Fifth Circuit Court of Appeals, Clerk of the District Court for New Mexico, Counsel for NMCD Brewster regarding the CD issue, saying it was not qualified legal mail. This mail was held for two weeks without notice then given back to me with reason and I had to remail. They refused to file stamp so the courts would know the date I attempted to send." [Doc. 1, p. "4A" or p. 7 of 10.] The claim, as stated, is almost nonsensical but because Defendant McReynolds addressed it in his motion for summary judgment, the Court examines it below along with the other claims of alleged denial of access to the courts.

On January 14, 2009. Defendants Ezell and Brown ("TCDF Defendants") filed a Motion to Dismiss under Rule 12(b)(6), arguing that the claims against them (Ezell's alleged refusal to provide Kirby with an appropriate CD player; and Brown's alleged retaliation against Kirby) must be dismissed for failure to exhaust available administrative remedies. [Doc. 25.] The TCDF Defendants' Motion to Dismiss contains attachments, including affidavit statements, TCDF grievance policies and grievances filed by Kirby. On February 27, 2009, Kirby filed a response to TCDF's motion, along with his own "counter-affidavit." [Doc. 33.] No reply was filed.

On January 16, 2009, Defendant McReynolds filed a Motion to Dismiss or in the alternative, Motion for Summary Judgment, arguing that the denial of access to court claims should be dismissed for failure to state a claim, mootness, or failure to exhaust administrative remedies. [Doc. 26.] McReynolds attached affidavit statements. On February 27, 2009, Kirby filed a response to McReynolds' motion along with about 64 pages of affidavit testimony and exhibits, including facility policies, grievances, and correspondence between Kirby and corrections' officials. [Doc. 34.] No reply was filed.

On January 14, 2009, Major Horton filed an Answer to Kirby's civil rights complaint, raising a number of defenses including failure to state a claim and failure to exhaust administrative remedies. [Doc. 23.] Major Horton did not file a separate motion to dismiss. On February 27, 2009, Kirby filed a "response" to Major Horton's Answer, with exhibits. [Doc. 35.]

The Court recommends that the motion to dismiss filed by Defendants' Ezell and Brown be granted in part and denied in part. The Court further recommends that the motion to dismiss/motion for summary judgment filed by Defendant McReynolds be denied. The Court will order <u>Martinez</u> reports as to the remaining claims.

### Analysis

### I.   **STANDARDS OF LAW:  RULE 12(B)(6) and RULE 56**

In ruling on a motion to dismiss under Rule 12(b)(6), the Court accepts the factual allegations of the complaint as true. <u>Liebson v. New Mexico Corrections Dep't</u>, 73 F.3d 274, 275 (10th Cir. 1996). The Court determines "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" <u>Ridge at Red Hawk, L.L.C. v. Schneider</u>, 493 F.3d 1174, 1177 (10th Cir. 2007) (*quoting* <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007)). "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." <u>Id.</u> (emphasis in original).

In resolving the exhaustion defense, the Court can consider attachments to pleadings without conversion of the motion for dismissal to one for summary judgment. *See* <u>Steele v. Federal Bureau of Prisons</u>, 355 F.3d 1204, 1212 (10th Cir.2003), *abrogated in part on other grounds*, <u>Jones v. Bock</u>, 549 U.S. 199, 127 S.Ct. 910 (2007). However, it may be appropriate to convert a motion to dismiss

4

to one for summary judgment. *See* Whitesel v. Sengenberger, 222 F.3d 861, 866 (10th Cir.2000) (if defendant files a motion to dismiss requiring consideration of additional factual material, the court should convert the motion to one for summary judgment).  *See also* Mintun v. Corrections Corp. of America, 2009 WL 666958 at *2 (W.D. Okla. Mar. 10, 2009) (converting defendant's motion to dismiss to one for summary judgment when parties referred to matters outside the pleadings for propositions involving exhaustion of administrative remedies).

Here, the parties refer to attachments outside the pleadings, including policy and procedures regarding exhaustion, correspondence about grievances, grievances and responses, and affidavit testimony.  Thus, the Court converts the motions to dismiss on the issue of exhaustion of administrative remedies to motions for summary judgment.[4]

In conducting a review under Rule 56, the Court considers the evidence in the light most favorable to the nonmoving party. Clark v. Edmunds, 513 F.3d 1219, 1221-22 (10th Cir. 2008). Summary judgment is warranted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Because Kirby proceeds *pro se*, the Court must review his pleadings liberally. Haines v. Kerner, 404 U.S. 519, 520, *reh'g denied*, 405 U.S. 948 (1972).  This means that if the Court reasonably can read the pleadings to state a valid claim on which Kirby can prevail, it should do so

---

[4]Typically, when a court converts a motion to dismiss into a motion for summary judgment, "it must provide the parties with notice so that all factual allegations may be met with counterveiling evidence."  Burnham v. Humphrey Hospitality Reit Trust, Inc., 403 F.3d 709, 713 (10th Cir. 2005). Although the Court did not notify the parties that it would convert the Motion to Dismiss, filed by Ezell and Brown, into one for summary judgment, Kirby is not prejudiced.  Kirby filed a response, attaching his own "counter-affidavit" in which he attempts to dispute many of the paragraphs contained in Brown's affidavit that was attached to the Motion to Dismiss.  Clearly, Kirby had the opportunity to introduce evidence not complained in the complaint and in fact, did so.  His responses to both motions to dismiss referred to materials outside the complaint. See id., at 714.

5

despite, for example, any failure to cite proper authority or unfamiliarity with pleading requirements. Hell v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this does not mean the Court assumes the role of advocate for the *pro se* litigant. Id.

## II.     EXHAUSTION OF ADMINISTRATIVE REMEDIES

In accordance with the Prison Litigation Reform Act of 1995 ("PLRA"), 110 Stat. 1321-71, as amended, 42 U.S.C. § 1997e *et seq*., inmates must exhaust prison grievance procedures before filing a lawsuit. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(a).

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C. § 1997e(a).

A prisoner who begins the grievance process but does not complete it may be barred from pursuing a § 1983 claim under the PLRA. Starks v. Lewis, 2009 WL 427108 at *2 (10th Cir. Feb. 23, 2009) (*citing* Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002)). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones, 127 S.Ct. at 918-19 (internal citation omitted).

Here, all Defendants, either in their motions or answer, asserted that Kirby did not exhaust his administrative remedies, both as to his claims for denial of access to courts and retaliation. Kirby argues that he either exhausted all of his administrative remedies or was not required to exhaust administrative remedies with respect to the retaliation claim.

### A.     Exhaustion of Retaliation Claim (as asserted against Brown)

Kirby alleges that TCDF Grievance Officer Brown harassed him when Kirby asked for a copy of a grievance he filed concerning the request for a CD player. Kirby further asserts that when Brown learned Kirby wanted the grievance so that he could send it to federal court, Brown

considered that a "threat." Kirby argues that "hours later, I was put in segregation saying I was a threat to the security of the institution." [Doc. 5.]

Brown avers in his affidavit attached to the Motion to Dismiss that Kirby did not file a grievance regarding alleged retaliation against Brown. Brown stated that during the investigation of Kirby's grievance (regarding the CD player request), Brown met with Kirby several times. At one of the meetings, Kirby complained that 20 calendar days had passed without a response since submission of his grievance. Brown explained to Kirby that the policy allowed 20 *working* days to process the grievance, which had not yet expired. Kirby told Brown, allegedly in a threatening manner, "You just told me you have 20 working days. You do it however you want. You just wait and see what happens." When Brown asked Kirby if that was a threat, Kirby allegedly did not deny it. Brown then reported Kirby's statement to a Shift Supervisor and was advised to complete an Inmate Misconduct Report which Brown did, charging Kirby with threats. Brown stated that he did not send Kirby to segregation because he had filed a grievance or engaged in any legal activities. As of that date, Brown was not aware of Kirby's legal activities, including the fact that he had filed a lawsuit on July 15, 2008. [Doc. 25, Brown Aff. at ¶¶ 27, 28.]

In his affidavit, Brown confirmed that he was the Grievance Officer at TCDF during the pertinent time frame, January 2004 - October 2008 and summarized the grievance procedures and policy at TCDF. Every inmate at TCDF receives a copy of the inmate handbook containing a summary of the grievance policy. In addition, every inmate is given an orientation at which he receives a written copy and oral summary of the grievance policy. [Doc. 25, Brown Aff. ¶¶ 6, 7.]

Brown explained that under TCDF's grievance policy, "reprisals against inmates for utilizing grievance procedure" is a grievable matter. [Id., ¶ 8.] To exhaust administrative remedies at TCDF, an inmate must follow the grievance procedures, including meeting deadlines, and carrying the

7

grievance through to the finish. TCDF grievance procedure specifies that an inmate must first file an informal complaint on a specified form, within five calendar days of becoming aware of a grievable complaint. The informal complaint must be submitted before the inmates files a formal grievance on a different form. [Id. at ¶ 10.] A formal grievance process may be initiated only if the inmate is dissatisfied with the outcome of the informal grievance process or does not receive a response. A formal grievance is filed within 20 calendar days of the alleged incident. The time to file begins from the date the inmate knew of the problem or incident. The inmate must attach a copy of the informal grievance to the formal grievance. [Id. at ¶¶ 11, 12.]

Upon receipt of a formal grievance, the Grievance Officer notes the date it was received and assigns it a number. Grievances may only be filed with the Grievance Officer. The officer then investigates the grievance and completes the officer's portion of the formal grievance form. The officer's investigation and report and recommendation must be completed and submitted to the Warden for review within 20 working days of receiving the grievance. The Warden or designee has 15 working days to review and approve, disapprove or modify the officer's recommendation and provide a written response to the inmate. [Id. at ¶¶ 13, 14, 18.]

If the inmate is not satisfied with the formal grievance process, he may appeal to the Office of the Secretary of Corrections within 7 calendar days of receiving the Warden's decision. To do so, the inmate completes the appeal section of the Inmate Grievance Form and submits it to the Grievance Officer. The officer attaches all relevant materials and delivers the appeal to the Grievance Administrator within 5 working days of receiving the appeal. The Grievance Administrator conducts additional investigation if necessary and makes a recommendation to the Secretary or designee within 25 calendar days of receiving the appeal. The Secretary's decision is final and ends the grievance process. [Id. at ¶¶ 15, 16, 17.]

Brown logged in all grievances filed by Kirby (and other inmates) during the pertinent time frame, but the only grievance documented then was grievance concerning Kirby's CD player request. [Ex. 25, Brown Aff. Ex. D, Kirby Grievance No. 080701, dated 7/3/2008.] That grievance did not allege retaliation. [Ex. 25, Brown Aff. Ex. E.]

Kirby does not expressly admit the he did not file a grievance regarding alleged retaliation. [Doc. 33.] Instead, he argues that he is not required to exhaust administrative remedies for a claim of retaliation.

> [T]he Court was aware that declaratory and injunctive relief does not require administrative remedies, converted the allegation of retaliation to a retaliation claim realizing the retaliation would be adverse to the Plaintiff's access to the courts, if the allegation were true, and administrative remedies, if they could apply in any form or fashion, would be futile.

[Doc. 33, p. 2 of 16.] The Court interprets Kirby's argument to be one of futility. In other words, he claims it would have been futile for him to have exhausted his administrative remedies with regard to a retaliation claim, or that the requirements for administrative remedies do not apply to retaliation claims.

The Court disagrees. It is true that prison officials may not discipline an inmate for exercising his constitutional rights, Smith v. Maschner, 899 F.2d 940, 947 (10th Cir. 1990). However, a prisoner must exhaust all available administrative remedies prior to filing an action under § 1983. Jernigan, 304 F.3d at 1032. "The prisoner must exhaust all administrative remedies available even if administrative procedures 'would appear to be futile at providing the kind of remedy sought.'" Carr v. Brill, 187 F. App'x 902, 904 (10th Cir. July 10, 2006) (*quoting* Jernigan, 304 F.3d at 1032).

The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular incidents. "[W]e stress the point . . . that we will not read futility or other exceptions into [PLRA's] statutory exhaustion requirements." Booth v. Churner, 532 U.S. 731, 741 n. 6, 121 S.Ct. 1819 (2001).

It is undisputed that Kirby was aware of the grievance procedure at TCDF, had used it with respect to other grievable matters, and that issues relating to alleged retaliation were grievable under the grievance policy. In addition, while Kirby summarily denied Brown's assertion that Kirby did not file a grievance concerning retaliation, Kirby never states that he did file a grievance alleging retaliation nor does he refer to a date when such a grievance was filed. He primarily contends that he was not required to file a grievance alleging retaliation. The Court finds otherwise. Because Kirby was required to exhaust the retaliation claim before filing suit and there is no evidence that he did so, the Court recommends that the retaliation claim be dismissed, without prejudice,[5] for failure to exhaust administrative remedies. In addition, the Court recommends that Defendant Brown be dismissed from this lawsuit.

    **B.**    **Exhaustion of Denial of Access to Court Claims**

          *1.*    *Denial of Access to Court Claim re: CD equipment asserted against Ezell and McReynolds*

Kirby alleges that Ezell (and McReynolds and a previously dismissed defendant, Williams) "promised but refused to supply the NMCD Policy required equipment and Plaintiff cannot respond to court procedures and rules." [Doc. 1, p. 2 of 10.] More specifically, Kirby contends that on April 16, 2008, he requested equipment from Ezell to listen to CD's of the state court trial proceedings.

---

[5]While it appears from Respondents' policy that a grievance concerning alleged retaliation for activities in 2008 would be time-barred, the Court recommends the claim be dismissed without prejudice, due to Respondents' practice in accepting Kirby's untimely grievances. It is Respondents' decision whether or not to accept an untimely grievance.

He further states that Ezell wrote a response to Kirby's request noting that the facility was obtaining the requested equipment.

Kirby asserts that on the morning of May 8, 2008, McReynolds told Kirby he had spoken to Ezell and that they were obtaining the equipment to play the CD's. Kirby argues that Corrections Department policy CD-121001.h.9 requires the facility to supply equipment to play the CD's. "Ezell and McReynolds have sent the court CD back to the court, denied possession of the CD's, made excuses, false promises all in an attempt to cover their refusal to get the equipment. McReynolds' latest excuse is the court's problem for converting to CD, saying they have a tape player." [Doc. 1, p. 4 of 10.] Thus, Kirby alleges that he was denied access to courts by Ezell's refusal to provide him with equipment to play the CD's containing state court trial transcripts.

Ezell argues that Kirby did not properly exhaust his administrative remedies with respect to this claim because his grievance was untimely. According to Ezell, Kirby failed to submit an informal complaint within 5 days of becoming aware of the issue or to submit his formal grievance within 20 days.

Ezell also asserts that Kirby did not exhaust his administrative remedies regarding this grievance *before* filing the lawsuit. Kirby filed his formal grievance on July 1, 2008, only 14 days before he filed this federal lawsuit on July 15, 2008. The investigation into the grievance had not been completed as of July 15, 2008. The Warden's response was rendered on July 28, 2008, thereby concluding the grievance procedure.

In sum, Ezell contends that this claim of denial of access to the courts must be dismissed for Kirby's failure to timely file his grievances in accordance with TCDF procedures and also because he filed the lawsuit before completing the exhaustion process. [Doc. 25, pp. 5-6.]

Kirby argues that he did exhaust his administrative remedies with respect to this claim. [Doc. 33.] Even if correct that he filed this lawsuit before receiving a final decision in the grievance process, Kirby states that the Court could elect to stay proceedings to allow completion of administrative remedies.  He further asserts that the grievance process were complete on September 8, 2008, approximately three months before service of the complaint was effected on Ezell.[6] [Doc. 33, p. 4.  ]

Attached to Ezell's motion to dismiss, is Kirby's "inmate informal complaint," regarding the CD equipment request. [Doc. 25, Ex. E.] It was signed by Kirby on May 6, 2008 and received by the Ezell on May 9, 2008.  Kirby stated that the date of the incident was "April 14 ongoing."   Kirby stated:

> Failure to address and comply with CD 121001 H.9.  "A tape or compact disc (CD player will be available for listening to trial transcript tapes overnight."  The Court sent the CD over 10 days ago.  I have asked to personally speak with Warden Ezell, but it seems Warden Rodriguez seems to interfere.

[Doc. 25, Ex. E.] Although the informal complaint was submitted more than 5 days after the incident, it was not rejected by Ezell based on untimeliness.  Instead, Ezell wrote that "we discussed this issue on 7 May 2008. [ ] I explained we are working on establishing a process where will be in compliance with having a CD player available."  Thus, all parties, including Kirby, signed off on the informal complaint on May 9, 2008, acknowledging resolution of the informal complaint.  Clearly, the impression given by Ezell's response was that the facility was not in compliance with the pertinent policy but was attempting to comply.

---

[6]Ezell actually signed the Waiver of Service form on December 2, 2008, which was filed on December 31, 2008. [Doc. 20.]

On July 1, 2008, Kirby filed a formal grievance that was received by the officer on July 3, 2008. Kirby wrote that the date of the incident was "April 16 and ongoing." The grievance states:

> Warden Ezell and contract state monitor Shannon McReynolds have failed to perform on their written informal resolution promise to provide a CD player to listen to trial transcripts (court hearings for appeal purposes) as required by NMCD CD policy 121001.H.9. . . .

Kirby requested that the equipment be provided to him along with a written explanation why policy was not followed.

Although the informal grievance was submitted more than 20 days after the incident on April 14 or 16, 2008, the grievance officer checked the box indicating: "grievance is accepted for consideration." [Doc. 25, Ex. E.] The option to reject the grievance as untimely was available on the form, but the grievance officer did not check that box.

A response was provided to Kirby, dated July 28, 2008, stating that according to policy 1210001.H.9, a tape or CD player would be made available overnight to listen to trial transcripts. In addition to the tape players supplied by TCDF, the facility had purchased and made CD players available.

> Since, according to NMCD policy, you are not allowed to have access to a computer, it is your responsibility to request or arrange (at your expense) for a CD of your transcripts that is formatted so that any standard CD player or tape player will play the disk or tape. It has been determined that TCDF is in substantial compliance with the above policy. You have failed to substantiate your claim that the Warden or the contract Monitor failed to perform their written informal resolution.

The grievance officer recommended dismissal of the grievance, and on July 28, 2008, the warden or designee dismissed it.

The policy in question provides, in part, that "[a] tape or ... CD player will be available for listening to trial transcript pages overnight." CD-121001(H)(9) [Doc. 25, Ex. F]. This same policy

also states: "The Department shall not make computers or typewriters available to inmates . . . for the purpose of enabling inmates to do legal work." CD-121001(H)(8) (emphasis in original).

In his affidavit, McReynolds explained that he continued his investigation into Kirby's formal grievance and reviewed the policy in question. He stated that while TCDF provided audiotape players and CD players, he determined that Kirby did not possess audio CD's of his court proceedings. Instead, he had obtained CD-ROM computer discs containing his computer files. Those files could only be played on a computer and could not be played on an ordinary CD player. Kirby was advised that he needed to have the CD-ROMs converted to standard audio CD format or tape format. Because the facility's policy stated it was not required to provide inmates with computers for work on their legal claims, the formal grievance was denied and dismissed. [Doc. 25, McReynolds Aff., ¶29.]

McReynolds also stated in his affidavit that on August 5, 2008, he received notification that Kirby had appealed the dismissal of his grievance. "Although his appeal was submitted one day late, and was therefore untimely, I entered the appeal on the Facility Grievance Log." [Doc. 25, McReynolds Aff. ¶ 30.] The Log shows that the Appeal was received as stated and does not indicate it was rejected for untimeliness. [Doc. 25, Ex. D.] An attachment to Kirby's response to McReynolds' Motion to Dismiss sets forth the appeal, dated August 5, 2008, and received on August 6, 2008. [Doc. 34, p. 39 of 41.] Again, nothing on the appeal portion of the form indicates the Department rejected the appeal for untimeliness.

It is true that the appeal was not completed before Kirby filed this lawsuit on July 15, 2008. Attached to Kirby's response to McReynolds' Motion to Dismiss, there is a denial of Kirby's appeal, signed and dated September 8, 2008. [Doc. 34, p. 37 of 41.] The denial form states:

14

> Denied: This is in response to your grievance appeal you filed concerning legal issues. The initial investigation indicates that inmates will not be allowed to use computers or any software to do legal work. CD-12100, Legal Access, H.8, states that the Department shall not make computers or typewriters available to inmates in the Unit Education Resource Center for the purpose of enabling inmates to do legal work. TCDF has purchased and made cassette and CD players available. It is your responsibility to request or arrange for a CD of your transcripts that is formatted so that any standard CD player or tape player will play the disk or tape at your own expense. It will be in the best interest of the department when changes to policy will be made. Your grievance appeal has failed to provide any evidence to support your claim; therefore this grievance appeal is denied.

[Doc. 34, p. 37 of 41.]

The uncontroverted evidence shows that despite Kirby's untimely grievances (per TCDF policy requirements), TCDF accepted them for consideration. Although TCDF could have rejected both grievances for untimeliness, it did not do so. In view of the undisputed facts, the Court is unpersuaded by Respondents' argument that Kirby's untimely grievances are fatal to his claim.

The Court acknowledges that Kirby's appeal was neither filed nor resolved before he filed this lawsuit. However, the appeal was filed shortly after Kirby filed the lawsuit and was resolved before Respondents were served. Thus, there is little prejudice under these circumstances. Moreover, in liberally construing a *pro se* litigant's pleadings, as the Court must, and in view of TCDF's decisions to accept Kirby's untimely filings, the Court recommends finding that genuine issues of material fact exist regarding the question of exhaustion as to this denial of access claim. Accordingly, the Court recommends that it be allowed to proceed. The Court will order a <u>Martinez</u> report as to the merits of the claim, including whether there is evidence of an actual injury to Kirby in relation to this claim.

### 2. *Denial of Access to Court Claim Regarding "holding 42 pieces of legal mail" as to CV 04-844, asserted against McReynolds*[7]

There is no demonstration by Respondents as to the exhaustion of this claim. Instead, McReynolds incorrectly argues that Kirby must plead and prove that he exhausted NMCD's internal grievance procedures. [Doc. 26, p. 8.] After the United States Supreme Court's decision in Jones v. Bock, 127 S.Ct. at 921, it is Respondents' burden to plead and prove that the plaintiff failed to exhaust his administrative remedies.[8] Because Respondents did not satisfy their burden with respect to issues concerning exhaustion of this claim, the Court will order a Martinez report.

### 3. *Denial of Access to Court Claim regarding refusal to allow Kirby to take legal files to a court hearing, asserted against Major Horton*

As stated previously, Major Horton did not file a Motion to Dismiss, and instead, filed an Answer, raising several affirmative defenses including non-exhaustion of claims. Like McReynolds, Major Horton did not satisfy his burden with respect to demonstrating that Kirby failed to exhaust this claim.

In addition, Plaintiff filed a "response" to Major Horton's Answer in which he attached copies of state court pleadings, including an Order directing the detention center to show cause why it should not be held in contempt for not retrieving Kirby's documents for a court hearing. [Doc. 35, attachments.] The Court does not know the outcome of the Order to Show Cause nor whether it

---

[7]While the Complaint appears to raise this claim against non-parties to this lawsuit [Doc. 1, page "4A" or p. 7 of 10], McReynolds' Motion for Summary Judgment addresses various claims regarding alleged delays in mailing legal documents and delays in access to legal files. [Doc. 26.] Thus, in an abundance of caution, the Court will address them.

[8]Prior to Jones, Tenth Circuit law required that the prisoner demonstrate exhaustion under the PLRA before his lawsuit could proceed. Steele, 355 F.3d at 1210 (exhaustion is a pleading requirement that must be established by the inmate). However, Steele was reversed, in part, by Jones, where the United States Supreme Court held that the issue of exhaustion of administrative remedies is an affirmative defense. Jones, 127 S.Ct. at 921. In other words, an inmate is not required to specially plead or demonstrate exhaustion in his complaint. Rather, the defendant must plead and prove failure to exhaust.

relates to this particular denial of access claim. Thus, the Court will order a <u>Martinez</u> report regarding this claim as well.[9]

### **Recommended Disposition**

(1) That the motion to dismiss filed by Ezell and Brown be granted in part and denied in part, with the result that: (a) Kirby's claim of retaliation against Defendant Brown be denied and dismissed, without prejudice, for failure to exhaust administrative remedies, and (b) Defendant Brown be dismissed from this lawsuit; and

(2) That the motion to dismiss/motion for summary judgment filed by McReynolds be denied because genuine issues of fact exist as to exhaustion of Kirby's denial of access claim against Defendant Ezell and because there was no showing of exhaustion as to the other denial of access claims, with the result that the denial of access claims be allowed to proceed.

                                                          *Lorenzo F. Garcia*
                                                          Lorenzo F. Garcia
                                                          Chief United States Magistrate Judge

---

[9]The fact that Kirby's civil rights complaint may be a mixed complaint, containing both exhausted and unexhausted claims, does not prevent the Court from dismissing the "bad" claims and addressing the "good" claims. *See* <u>Jones</u>, 127 S.Ct. at 924 ("if a complaint contains both good and bad claims [in a section 1983 action], the court proceeds with the good and leaves the bad. '[O]nly the bad claims are dismissed; the complaint as a whole is not.'").