# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

RICHARD KIRBY,

       Plaintiff,

v.                                No. CIV 08-659 JCH/LFG

ROBERT EZELL, SHANNON
McREYNOLDS, and MAJOR
(VINCE) HORTON,

       Defendants.

## MAGISTRATE JUDGE'S ANALYSIS
## AND RECOMMENDED DISPOSITION[1]

This is *pro se, informa pauperis* civil rights action brought under 42 U.S.C. § 1983 by

Plaintiff Richard Kirby ("Kirby").  At the time he filed this action, Kirby was incarcerated at the

Torrance County Detention Facility ("TCDF") in Estancia, New Mexico.  Kirby alleges that he was

unconstitutionally denied access to the courts.  He makes three separate claims: (1) Defendants

Robert Ezell ("Ezell") and Shannon McReynolds ("McReynolds") denied Kirby access to the proper

equipment for accessing certain compact discs ("CDs" or "CD-ROMs") containing transcripts of

---

[1] **Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations.  A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations.  If no objections are filed, no appellate review will be allowed.**

his criminal trial; (2) Defendant Major Vince Horton ("Horton")[2] refused on two occasions to allow Kirby to take his legal files on transport to court hearings; (3) forty-two pieces of legal mail which Kirby had addressed to attorneys were held at a corrections facility for two weeks before being given back to Kirby, and he was forced to re-send them.

The Court ordered Defendant to produce reports pursuant to <u>Martinez v. Aaron</u>, 570 F.2d 317 (10th Cir. 1978), to develop the factual and legal basis for determining whether Kirby has meritorious claims and whether he exhausted his prison remedies with respect to these claims. The Court advised the parties that the <u>Martinez</u> reports could be used for summary judgment purposes. [Doc. 43]. Horton submitted his <u>Martinez</u> report on June 8, 2009 [Doc. 47]. He asks that the Court construe the report as a motion for summary judgment. Ezell submitted his <u>Martinez</u> report on June 29, 2009 [Doc. 50]. He asks the Court to dismiss the claims against him. McReynolds was granted an extension of time to file his <u>Martinez</u> report; it was filed on July 29, 2009. [Doc. 52]. He asserts that there was no interference with Kirby's access to the courts at any time.

On August 20, 2009, Kirby filed a document titled, "Second Request for Extension of Time to File a Response to the Martinez Report" [Doc. 53], docketed as a motion for extension of time. In this document, Kirby asks the Court for a 90-day extension of time to conduct discovery. He states further, "If this Request or Motion is sufficient to allow evaluation of the claims, the Court may deem this document as Plaintiff's Response." [<u>Id.</u>, at 17]. The Court finds that Kirby's August 20, 2009 filing is sufficient for summary judgment purposes and that no further discovery is necessary. To the extent the document is considered as a motion, that motion is denied as discussed further below.

---

[2]This Defendant is referred to as "Major Horton" throughout the briefing. He identifies himself as "Vince Horton" in his affidavit, attached as Ex. C to his <u>Martinez</u> Report.

**Discussion**

Claim I:
Failure to Supply Proper Equipment for Playing CDs
and Confiscation of CDs and Cassettes as Contraband

A. *Plaintiff's Assertions*

Kirby's allegations regarding CD equipment involve incidents occurring while Kirby was incarcerated at TCDF from April 10 to August 28, 2008.  During that period, Ezell was the TCDF Warden, and McReynolds was a Contract Monitor for the New Mexico Department of Corrections ("NMDOC") monitoring TCDF.

Kirby alleges in his Complaint that Defendants Ezell and McReynolds "promised but refused to supply the NMCD [*i.e.,* New Mexico Department of Corrections] required equipment and Plaintiff cannot respond to court procedures and rules." [Doc. 1, at 2].  He is referring to equipment which would enable him to listen to a trial transcript in a particular CD format which is accessible only with a computer.

Kirby alleges that on April 16, 2008, he asked Ezell for the CD equipment and that on May 8, 2008, Ezell "put in writing they were obtaining the equipment."  Also on May 8, he alleges, Defendant McReynolds said that he had spoken with Ezell and they were getting the equipment; however, Kirby says, the equipment was never provided to him in violation of NMDOC Policy CD-121001.H.9.  Kirby alleges further that Ezell and McReynolds sent the CDs back to the court, denied him possession of the CDs, and made excuses and false promises to cover up their refusal to get the proper equipment.  [Doc. 1, at 2, 4].  He contends that their actions violated his constitutional right of access to the courts.

In documents filed subsequent to the Complaint Kirby makes additional allegations.  The Court will consider these allegations in light of the policy that *pro se* pleadings are to be liberally

3

construed.  In his Response [Doc. 33] to the Motion to Dismiss filed by Ezell and then-Defendant Brown, Kirby alleges that on April 22, 2008, his compact disc was seized as contraband.  He alleges further that there was no CD player of any type at TCDF for listening to the disc.  He states that he wrote to Warden Ezell about these issues on April 24 and 30, 2008 and that Ezell responded in writing on May 1 and 6, 2008.  Kirby was dissatisfied with these responses and filed an informal grievance on May 6.  On May 6, he discussed the issue with Ezell and on May 9, Ezell resolved the informal grievance by stating his intention to come into CD Policy compliance, and Kirby accepted that resolution.  He says he later realized that the informal resolution was not being honored.  [Doc. 33, at 2-3; Kirby's affidavit attached thereto, at 7-9].

Kirby further alleges that the postmarked envelopes that the court CD's came in and the receipts therefor were destroyed by TCDF officials, and this prevented him from documenting to the New Mexico Court of Appeals "why I could not utilize the compact disc to reference the court hearings in pleadings." [Doc. 33, Kirby affidavit attached, at 9].

In his Response [Doc. 34] to McReynolds's Motion to Dismiss or for Summary Judgment, Kirby says that his cause of action against McReynolds arose when he was attempting to file a motion for reconsideration from a court's verbal order, and a docketing statement for a direct appeal to the New Mexico Court of Appeals. [Doc. 34, at 2].  He says that McReynolds "knew that I had a deadline to respond to a final hearing purposed [sic] order ten days from April 23rd.  The CD was the only access to the verbal court order and the district judge said I would have to get the purposed [sic] order from the audio recording." [Doc. 34, at 3].  He alleges further that he had to file his docketing statement "without the benefit of any audio or written opinion from the hearing . . . .  In this case the Order entered was verbal and Plaintiff's only access was the CD recording of the

proceeding." He says the state court of appeals granted him leave to amend his docketing statement. [Id.].

Kirby states further in this document that "from Plaintiff's arrival at TCDF on April 10th 2008 to - on or approximately July 28th 2008, TCDF had not purchased a CD player of any type." He says that "[t]he CD player purchased by TCDF did not have any digital time display allowing a person to quote location on the discs . . . ." [Doc 34, at 2]. Kirby also alleges that Defendants confiscated cassette tapes from him containing court material, because the tape housing was white and not clear. [Doc. 34, at 15].

B.   *Defendants' Contentions*

Defendants acknowledge that TCDF has an obligation to provide inmates with cassette tape players or audio CD players for listening to legal transcripts, but they note that NMDOC policy specifically prohibits facilities from allowing inmates access to computer equipment for pursuing legal remedies.

Defendants contend that the CDs Kirby wished to listen to were specially formatted "FTR" ("For the Record") CDs, which can be accessed only with computer equipment containing proprietary FTR software. Thus, they contend they did not violate NMDOC policy with respect to audio equipment and, in any event, Kirby could have availed himself of a different format if he wished to listen to or read transcripts at TCDF. In addition, Ezell and McReynolds contend that Kirby was not denied his right of access to the courts, as he had no need to cite to the record for purposes of his criminal appeal and he had a full access to the New Mexico courts for every aspect of his appeal.

In addition, Defendants argue that confiscation of Kirby's CDs and tape cassettes were appropriate, in keeping with policy, and justified by security concerns.

5

C. *Exhaustion of Remedies*

Ezell and McReynolds argued in earlier motions for dismissal or summary judgment that Kirby failed to exhaust his administrative remedies with respect to the claim of denial of CD equipment. They contend that his grievance on this issue was untimely filed, and that this lawsuit was filed before the exhaustion process was completed.

The Court rejected this argument, noting that the grievance officer at TCDF accepted the grievance in spite of its untimeliness and that Kirby's grievance appeal was also accepted, although it was one day late. Both the grievance and the appeal were considered and resolved. The Court found further that, although the grievance appeal was not filed prior to the filing of this lawsuit, the appeal was resolved before Ezell and McReynolds were served with the Complaint and thus no prejudice was shown. [Doc. 37].

The Magistrate Judge found a genuine issue of fact as to exhaustion of this claim and recommended that the claim be allowed to proceed. The District Court adopted the Magistrate Judge's findings and accepted the recommendations. [Doc. 42]. The Court does not resolve the issue but, for purposes of this analysis, will assume that Kirby exhausted his remedies with respect to the claim that he was denied access to the courts because Ezell and McReynolds would not permit him use of proper equipment for listening to his CDs of court proceedings.

D. *Factual and Procedural Background*

In April 2008, shortly after his arrival at TCDF, Kirby made a request for audio equipment for listening to the FTR CDs containing transcripts of state court proceedings.

Ezell states in an Affidavit attached to his <u>Martinez</u> report that TCDF follows NMDOC policies regarding legal access by inmates and legal resource materials at corrections facilities. [Doc. 50, Ex. 1, at 1-2]. NMDOC Policy CD-121000 provides that "[i]nmates shall not be barred from

6

the courts and the Department shall, when written requests are made, assist inmates in the preparation and initial filing" of certain kinds of legal actions including direct appeals of their convictions, federal and state habeas corpus petitions, civil rights actions under § 1983, and lawsuits complaining of conditions of confinement. [Doc. 50, Ex. 17 part 1, at 3].

NMDOC Policy CD-121001[3] provides that "[a]ll institutions shall provide access to the legal resources as required by this policy." [Id., at 7]. The Policy goes on to state, "Legal Resource Centers shall provide no legal resource material except for such material as set forth in this policy," and that "[t]he Department shall not make computers or typewriters available to inmates in the Unit Education Resource Center for the purpose of enabling inmates to do legal work." [Id., at 8, emphasis in original]. The Policy further provides that a "tape or compact disc (CD) will be available for listening to trial transcript tapes overnight." [Id., at 9].

Ezell states in his Affidavit that if an inmate requests equipment or materials that are not specified in the NMDOC policies, approval of the equipment must be given by NMDOC since he, as the warden of an individual facility, is not authorized to approve deviations from NMDOC policies. [Doc. 50, Ex. 1, at 3].

Ezell further states that, at all times during Kirby's incarceration at TCDF in 2008, the facility had both cassette tape players and audio CD players available for inmates to listen to trial transcripts, so long as such transcripts had been "appropriately sent to them from a Court or attorney." He asserts that at all relevant times TCDF was in compliance with the NMDOC policy regarding availability of cassette or audio CD players. [Doc. 50, Ex. 1, at 2].

---

[3]Policy CD-121001 was revised effective July 30, 2008. Ezell attached copies of both the pre-revision version (Ex. 17), and the revised version (Ex. 18) to his Martinez report. The two versions are identical with respect to the provisions regarding CD and cassette players. The Court references only Ex. 17 herein.

TCDF Law Librarian Tracy Strand ("Strand") also asserts in an affidavit that at all times pertinent to this lawsuit, TCDF was in compliance with NMDOC policies regarding cassette and audio CD players and that the facility had both types of players available for inmates. [Doc. 50, Ex. 2, at 2]. And in an affidavit, McReynolds states that at all times during Kirby's incarceration at TCDF, the facility had a functioning regular audio CD player, and a functioning tape player available for inmates' use. [Doc. 26, Ex. B, at 1].

Kirby disputes the assertion that TCDF had a functioning CD player throughout the time of his incarceration there, claiming that the facility did not purchase one until July 28, 2008. [Doc 34, at 2]. However, the record indicates that on June 19, 2008, Tracy Strand notified Kirby that CD players were available for his use in the law library [Doc. 50, Ex. 12]; thus, Kirby's statement appears to be inaccurate, at least as of June 2008.

Between April and July 2008, a series of letters, memoranda, informal complaints and meetings between Kirby and TCDF officials including Ezell, McReynolds and Strand, ensued with respect to the CD issue. Ezell states in his <u>Martinez</u> report that until a discussion with Kirby on May 7, he did not understand that the CDs in question were not standard audio CDs that could be played on the CD players available at TCDF but rather were specialized CDs requiring a computer with propriety FTR software installed. [Doc. 50, at 7-8; Ex. 1, at 5].

In a May 7, 2008 response to Kirby's informal complaint, Ezell wrote, "we discussed this issue on 7 May 2008. As I explained, we are working on establishing a process where we will be in compliance w/ having a CD player available." [Doc. 50, Ex. 1, at 5]. Kirby argues that this statement indicates that TCDF was not in compliance at that time. Ezell asserts that, by this statement, he did not intend to imply that TCDF was not in compliance with NMDOC policy regarding legal access, and such implication would not accurately reflect the status of TCDF's

compliance.  NMDOC policy  at the time required only that TCDF provide a tape cassette player or a CD player [Id., at 5-6], and it is Defendants' position that at all times pertinent hereto, cassette players and regular audio CD players were available for inmates' use.

In addition to his claim that he was denied proper equipment, Kirby also contends that he was deprived of the use of his CDs, which in turn deprived him of his right to access the courts, when Defendants confiscated the CDs as contraband.

Ezell states in his affidavit that inmates are not permitted to possess CDs or audio cassettes that cannot be verified as containing legal material.  TCDF verifies legal mail by confirming that the return address matches the postmark, and then confirming that the return address is a court or an attorney of record for the inmate.  If there is a discrepancy between the return address and the postmark, the item will be seized as contraband.  Ezell states further that permitting inmates to possess CDs or audio cassettes of unknown origin threatens the safety and security of the prison operation and inmate population, in that CDs or audio cassettes submitted under the guise of containing legal materials could actually contain information relative to an escape or to the commission of crimes within the facility.  TCDF staff does not listen to the content of the CDs to confirm whether the material is legal in nature; instead, all CDs or cassettes that do not come from a court or attorney of record are considered to be contraband.  [Doc. 50, Ex. 1, at 3].

Ezell says that on April 22, 2008, an envelope addressed to Kirby and containing CDs arrived at TCDF and was seized as contraband because it was not sent from an attorney or a court. The return address on the envelope was Sixth Judicial District Court in Silver City, New Mexico; however, the envelope was postmarked at Tijeras, New Mexico, which is nearly 300 miles from Silver City.  Ezell assumed the CDs were mailed from Tijeras by Kirby's wife, Julie Kirby.

Ezell says he conferred with the NMDOC who confirmed that the CDs could not be considered "legal mail" as they did not come from an attorney or a court. [Id., at 4]. NMDOC Policy CD-121000 provides in its Definitions section: "(J) _Legal Mail_: Any letters, pleadings or legal documents to or from an inmate's attorney of record, a judge, a court of law, or an opposing attorney." [Doc. 50, Ex. 17 part 1, at 3].

The record is clear, and Kirby does not dispute, that Kirby's wife, Julie Kirby, wrote to the Clerk of the Sixth Judicial District Court and requested a CD of two hearings held on March 19, 2008 in the case of State v. Kirby, CR-2002-0145. She did not ask that the CD be sent to Kirby at his place of incarceration; rather, she gave her own return address in Tijeras, New Mexico. The Clerk made a copy of the CD (or CDs) and mailed it to Julie Kirby, as she requested. [Doc. 50, Ex. 4]. Ms. Kirby then mailed the CD(s) to Kirby at TCDF; the envelope in which they were mailed indicated the return address as the Sixth Judicial District Court in Silver City. [Doc. 50, Ex. 5].

The CD(s) were seized as contraband by TCDF officials on April 22, 2008. Ezell states that he directed that the CDs be returned to the Sixth Judicial District Court. [Doc. 50, Ex. 1, at 4]. On April 24, 2008, Kirby wrote a letter to Ezell, asking for his assistance in understanding the position taken with respect to the seized CDs. He stated in this letter that the FTP program had been downloaded at his previous place of incarceration in Hobbs (_i.e._, Lea County Correctional Facility) and that inmates there were able to listen to court CDs. He adds, "I had been advised just as soon as the CD disks were removed from the contraband policy we would be allowed to hear the court CDs." [Doc. 50, Ex. 6].

On May 20, 1978, TCDF officials seized another incoming package addressed to Kirby which contained CDs. The mail was received from "Justice Partner" at the address in Tijeras, New Mexico used by Julie Kirby. Ezell says that because the CDs could not be verified to be legal mail

and were not mailed from an attorney or a court, they were returned to the sender per Kirby's instructions. [Doc. 50, at 9, 13; Ex. 11].

On July 22, 2008, a cassette tape was found in Kirby's property upon a search of his cell in connection with a disciplinary investigative report and, because the tape was not enclosed in a clear container, it was seized. [Doc. 50, at 14; Ex. 16]. Ezell states that inmates are permitted to possess clear cassette tapes only, since black, white or opaque tapes present security issues as inmates could hide items within the tape housing. If inmates receive opaque tapes from a court, they may not keep those tapes in their cells but can access the tapes after submitting a legal request. [Id.]

Both Ezell and McReynolds state in affidavits that, once they understood that Kirby was asking for computer equipment with FTR software, they made inquiries and passed information along to NMDOC personnel, so that Kirby's request could be accommodated if NMDOC determined that such accommodation was appropriate. [Doc. 50, Ex. 1, at 6; Doc. 52, Ex. B. at 1-2; Doc. 26, Ex. B, at 2]. McReynolds states that, after he was told that the CDs might play on a computer, he consulted with the Office of General Counsel at NMDOC but was told it was against DOC policy to provide computers for inmates to play CDs, and the law did not require that facilities provide computer access. [Doc. 26, Ex. B, at 2].

Kirby alleges that he had access to FTR equipment at a different facility, and he disputes Defendants' assertions that other facilities do not provide FTR access. [Doc. 53, at 8]. This dispute is not relevant to the issue of whether such equipment should have been provided at TCDF.

E. *Analysis*

In his request for equipment with which to listen to the FTR CDs, Kirby was asking Ezell and McReynolds to go beyond NMDOC policies which they were obliged to follow. They state that they made attempts to accommodate Kirby's request but that NMDOC officials informed them that

11

such accommodation was not possible.  Even if they had not made any such attempts, there was nothing in their actions – from denying computer access to confiscating the CDs sent from Kirby's wife – that worked a constitutional violation of Kirby's right of access to the courts.  The confiscation was appropriate as the digital media sent from Kirby's wife did not meet the definition of legal mail and constituted contraband.  TCDF was not required to provide Kirby access to a computer; indeed, it was forbidden by NMDOC policy to do so.

The restrictions on computer use, receipt of digital media from persons other than a court or an attorney, and possession in cell of cassette tapes with opaque housing, are not unconstitutional violations of an inmate's right to access the court.  A prison rule that treats incoming mail from an inmate's family member as non-legal mail, a policy that inmates are not allowed to possess digital media not sent from an attorney or a court, and are not permitted to have tape cassettes in their cells unless enclosed in a clear housing, are restrictions "reasonably related to legitimate penological interests," the test articulated in <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987).  Regarding this test, the Supreme Court notes:

> [The constitutional rights of inmates] must be exercised with due regard for the "inordinately difficult undertaking" that is modern prison administration. [*citing* <u>Turner v. Safley</u>]. In particular, we have been sensitive to the delicate balance that prison administrators must strike between the order and security of the internal prison environment and the legitimate demands of those on the "outside" who seek to enter that environment, in person or through the written word. Many categories of noninmates seek access to prisons [*e.g.*, lawyers, journalists and family and friends of inmates] . . . . All these claims to prison access undoubtedly are legitimate; yet prison officials may well conclude that certain proposed interactions, though seemingly innocuous to laymen, have potentially significant implications for the order and security of the prison. Acknowledging the expertise of these officials and that the judiciary is "ill equipped" to deal with the difficult and delicate problems of prison management, this Court has afforded considerable deference to the determinations of prison administrators who, in the interest of

12

security, regulate the relations between prisoners and the outside
world.

Thornburgh v. Abbott, 490 U.S. 401, 407-08 (1989).

In Turner v. Safley, at 90-91, the Supreme Court sets forth four factors applicable to the Court's determination whether a prison rule is reasonably related to legitimate penological interests.

First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it. The connection cannot be so remote as to render the regulation arbitrary or irrational, and the legitimate governmental objective must be "neutral." Jones v. Salt Lake County, 503 F.3d 1147, 1153 (10th Cir. 2007). When prison officials draw distinctions solely on the basis of the potential implications for prison security, the regulations are neutral. Id.

A rule that incoming mail sent to an inmate from a family member rather than a court or attorney, is not considered "legal mail," is reasonably related to the valid corrections goal of ensuring that dangerous materials are not sent into prisons. The same is true of a rule that inmates cannot possess digital media not sent from an attorney or a court. Mail from an inmate's family and friends is legitimately subject to greater scrutiny than is legal mail coming from a court or an attorney of record for the inmate, and restrictions on digital media sent to an inmate from a family member promotes a legitimate security interest at the prison. A rule preventing inmates' access to computers and the internet is also reasonably related to security concerns, as is a rule prohibiting possession of non-clear cassette tapes in cells.

The second factor set out in Turner is whether alternative means of exercising the right are available to prison inmates: "Where other avenues remain available for the exercise of the asserted right, courts should be particularly conscious of the measure of judicial deference owed to

13

corrections officials in gauging the validity of the regulation."  Turner v. Safley, at 90 (internal citation and punctuation omitted).  The alternatives need not be ideal; they need only be available. Jones v. Salt Lake County, at 1153.

As to this factor, the record indicates that Kirby was not without alternatives to the FTR CDs. In a document dated December 30, 2007 titled "Statement of Facts," Kirby states that in his litigation activities, "when court hearing references are required I have the court CDs transcribed or transferred to cassette tape and sent to me at my expense."  In a footnote, he adds, "Althought [sic] CD-121000.H.9 requires device 'for listening to trial transcript tapes overnight' – court CD's and CD players are prohibited by New Mexico Corrections Department and their contract facilities." [Doc. 52, Ex. A, at 20].  Thus, Kirby acknowledges that he had the means to obtain written transcripts or tape cassettes.  Although his statement that CD players are prohibited is not accurate, his statement demonstrates that he was aware of the difficulties involved in attempting to listen to "court CD's," by which he may be referring to FTR CDs, and it is clear that he was aware of alternatives.  In addition, Kirby notes in a letter dated December 5, 2007 that he actually had some hearings transcribed, indicating that he was capable of obtaining such services. [Doc. 34, at 22].

In an affidavit attached to McReynolds's Motion to Dismiss or for Summary Judgment, Diana Renteria, Court Monitor in the Sixth Judicial District, asserts that it is part of her job to supply transcripts of court proceedings to persons requesting them, and that she has had occasion to supply transcripts to Kirby.  She states further that the Sixth Judicial District can provide transcripts of proceedings on CDs in two formats: (1) regular audio CDs which will play on any audio CD player such as a "boom box," and (2) FTR format CDs which will play on a computer, with software downloaded from the FTR web site.  She says that the Sixth Judicial District Court can provide the

14

transcripts in either format, and persons requesting transcripts must fill out a request form stating which format they desire. [Doc. 26, Ex. A].

Thus, Kirby could have requested CDs in regular audio format, rather than a format that requires use of a computer, and he would not have been stymied by the NMDOC policy against use of computers by inmates.

In addition, Kirby was not prevented from listening to any cassette tapes. Although he was not allowed to keep non-clear tapes in his cell, TCDF permitted him to keep such tapes as his property and he was provided a tape player for listening to them in the attorney visitation room. [Doc. 50, at 14; Exs. 1, 2].

A third consideration set forth in Turner is the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally.

As to this factor, Kirby's request to TCDF officials that he be allowed to retain materials defined by prison policy as contraband, that he be given access to computers supplied with particular software, and his implication that he should be allowed to keep non-clear tapes in his cell, are essentially requests for special treatment not accorded other inmates. The prison is not obligated to provide special treatment to Kirby simply because he prefers to use FTR formatted CDs rather than regular audio CDs, and because he wishes to have family members send him digital media from the court, rather than corresponding directly with the court himself. The prison has a legitimate interest in applying its reasonable regulations to all inmates, rather than using its limited resources to single out one inmate for special privileges.

In a time of rapidly-changing technology, it may be that the NMDOC will decide to supply equipment, either a computer terminal that is not connected to the internet or some other device, that

will enable inmates to read or listen to CDs in FTR format and other formats not currently supported by prison regulations.  However, the fact that prisons do not have the most advanced technology for inmates' convenience does not mean they have violated inmates' constitutional rights, when other less advanced technology is available to assist inmates in achieving access to the courts.

Finally, Turner provides that a prison rule will not satisfy the "reasonable relationship" standard if the inmate can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests.

As to this fourth factor, Kirby has not pointed to any alternative method by which the prison can accommodate his preferences without causing an undue burden on its valid penological interests, which include its interest in applying prison rules even-handedly to the end that the safety and security of all inmates and employees are protected.

The record indicates that McReynolds and Ezell both attempted to accommodate Kirby's request for FTR-compatible equipment but that the request was ultimately denied based on NMDOC policy and the existence of alternatives.  Kirby's requests for FTR equipment were repeatedly met with the advice that he could listen to transcripts of hearings in the regular audio CD format, or on a cassette player.  On one occasion at TCDF, he was given both a CD player and a cassette player; however, he refused to use them because officials would not remove his restraints.  [Doc. 50, at 7-10; Ex. 1, at 5-8;  Exs. 2, 12-15; Doc. 52, Ex. B, at 2].  Defendants would not remove the restraints based on a policy that all segregation inmates be restrained.  This restriction is also reasonably related to security concerns.

"[T]he burden is not on the state to prove the validity of a prison regulation, but rather on the prisoner to disprove it."  Jones v. Salt Lake County, at 1159.  Kirby has made no showing that the rules regarding computer access, restrictions on incoming mail containing digital media from

family members, and restrictions on possession of opaque cassette tapes in cells, are not constitutionally valid.

Finally, even if everything asserted by Kirby were accepted as true, his claims regarding CDs and cassettes are fatally flawed because he cannot demonstrate that he suffered relevant "actual injury" as a result of Defendants' actions, a required element of a denial of access claim.  Lewis v. Casey, 518 U.S. 343, 351 (1996).  The Defendants' actions must amount to active interference with Kirby's ability to attempts to prepare and file a petition, complaint, or other initial legal pleading, Bounds v. Smith, 430 U.S. 817, 828 n.17 (1977), and Kirby fails to demonstrate this type of actual injury.

Kirby asserts that the litigation activity adversely impacted by Defendants' actions was his appeal of the habitual offender charges brought in State v. Kirby, Cause No. CR-2002-0145. [Doc. 53, at 15-16].  He claims that he was hindered in his ability to file a docketing statement.  The record indicates that the CDs requested from the Sixth Judicial District Court by Julie Kirby in March 2008 were for hearings held on March 19, 2008 in the case of State v. Kirby, CR-2002-0145.  Also, in an Inmate Request for Legal Access dated June 19, 2008, Kirby asks for a "CD player to listen to CR-2002-0145" hearings in order "to respond to appeal." [Doc. 50, Ex. 12].  Thus, the Court examines the proceedings in Cause No. CR-2002-0145.

In that case, Kirby was convicted on a jury verdict in January 2004 on one count of fraud. He was sentenced on March 12, 2004 to one year of incarceration, followed by 18 months of probation.  [Doc. 50, at 18-19; Ex. 20, at 33-34, 35 ].   His conviction was affirmed by the New Mexico Supreme Court on June 13, 2007.  State v. Kirby, 141 N.M. 838, 161 P.3d 883 (2007).

On October 29, 2007, the district attorney filed a supplemental criminal information in the case, seeking to add a habitual offender charge. [Id., at 22].  Arraignment on the habitual offender

charge was held on January 28, 2008. [Id., at 18].  A bench trial on the supplemental charges was started on March 19, 2008 and was continued to April 1, 2008 because not all of Kirby's legal materials were transported with him to the hearing.  (See discussion in Claim II, below).  [Doc. 50, at 19; Ex. 20, at 14-15].

On May 7, 2008, the state district court issued an Amended Judgment and Sentence in light of the habitual offender evidence, imposing the original 18-month suspended sentence for the original charges, plus an additional four years' based on two prior felony convictions. [Doc. 50, at 19-20; Ex. 20, at 10].

Kirby appealed this sentence.  [Doc. 50, Ex. 20, at 7; Ex. 21].  In connection with Cause No. CR-2002-0145, Kirby filed three docketing statements in the state court of appeals.  The first was filed on August 1 (or 4), 2008; two Amended Docketing Statements were later filed, on August 22 (or 25), 2008 and March 9 (or 12), 2009.  [Doc. 50, at 20; Ex. 20, at 2, 4, 5].  None of these docketing statements was rejected as untimely.  The Court of Appeals affirmed Kirby's sentence on March 31, 2009 and denied his motion for a rehearing.  At the time of briefing in the present case, Kirby had a Petition for Writ of Certiorari pending in the New Mexico Supreme Court (Cause No. 31,746) [Doc. 50, at 19-20; Ex. 20, at 2].

While Kirby contends that he was denied access to the courts, the record does not support his assertion.  Between the time the supplemental criminal information was filed on October 29, 2007 and the present, Kirby filed over 50 *pro se* pleadings in Cause No. CR-2002-0145. [Doc. 50, Ex. 20].  There is no indication in the docket, or anywhere else on the record, that Kirby was unable to present arguments regarding his original conviction or the habitual offender charge, to the New Mexico district court, court of appeal, or supreme court.

As noted above, none of Kirby's docketing statements was rejected as untimely or insufficient.  Furthermore, appellate docketing statements do not require specific citation to the transcript, so Kirby's inability to cite to the transcript would not have hindered his filing of the statements.  Rule 12-208(D).

F. *Conclusion*

Kirby has not shown that Defendants' actions with respect to his CDs and cassettes were taken in violation of prison policies, nor that those policies denied him due process or were unjustified by legitimate penological interests.   Furthermore, he fails to demonstrate that any legal claims he wished to present to the courts were frustrated, impeded or hindered by Defendants' actions regarding his CDs or cassettes.  <u>Lewis v. Casey</u>, <u>Turner v. Safley</u>; <u>Wardell v. Duncan</u>, 470 F.3d. 954, 959 (10th Cir. 2006).  The Court therefore recommends that Kirby's claims against Defendants Ezell and McReynolds regarding equipment, CDs and cassettes be dismissed with prejudice.

<u>Claim II</u>:
<u>Refusal to Allow Plaintiff to Take Legal Files to Court</u>

A. *Plaintiff's Assertions*

Plaintiff alleges that Defendant Horton "prohibited me from taking my legal files to court saying the NMCD policy would not allow it." [Doc. 1, at 3].  He states further that Horton refused to allow him to take any legal files on transport to a court hearing on January 22, 2008, and let him take only two envelopes to a March 22, 2008 hearing.  He alleges that these two incidents caused "delays and emotional distress." [<u>Id.</u>, at 6].

19

B. *Factual and Procedural Background*

Defendant Horton is the security warden at Lea County Correctional Facility ("LCCF"). [Doc. 47, Ex. C].  With respect to the January 22, 2008 hearing, Horton's <u>Martinez</u> report indicates that on January 8, 2008, state District Judge Gary Jeffreys ordered the Sheriff of Grant County to transport Kirby from LCCF to the Grant County Courthouse in Silver City for an arraignment at 3:00 p.m. on January 22, 2008 in the case of <u>State v. Kirby</u>, No. CR-2002-0145.  Further records indicate that Kirby was taken into custody of the Grant County Sheriff on January 17, 2008 to allow him to be transported to court for the hearing, with return to LCCF upon completion of the court proceedings.  [Doc. 47, Ex. A, at 1-2; Ex. B, at 17].  Kirby does not dispute these facts.

The docket sheet for Cause No. CR-2002-0145 indicates that the arraignment set for January 22, 2008 was continued to January 28.  The docket reflects that Kirby was represented by counsel Robert F. Turner at the time of the arraignment, and that copies of all pleadings filed in the case from the commencement of Turner's appointment were mailed to Turner on January 17, 2008. [Doc. 47, Ex. B, at 16-17].  Thus, even if Kirby did not have all of his legal files at the January 22 hearing, his attorney had available all pleadings in the case.  On January 31, 2008 the court granted Kirby's motion for self-representation, and attorney Turner was allowed to withdraw as counsel but was appointed as standby counsel. [Doc. 47, Ex. B, at 16].

Kirby alleges that he was again deprived of his legal papers in connection with another hearing on March 22, 2008.  The docket sheet for Cause No. CR-2002-0145 does not show a hearing on that date, although there was a hearing held on March 19, 2008.  Kirby has not asserted that the March hearing was held in a different case, and the Court will assume that Kirby is referring to the March 19 hearing in Cause No. CR-2002-0145.  The <u>Martinez</u> report indicates that on March 10, 2008, Judge Jeffreys ordered the Sheriff of Grant County to transport Kirby from LCCF to the Luna

County Courthouse in Deming, New Mexico for a hearing on a Supplemental Criminal Information

dated March 19, 2008, and to return him to LCCF upon completion of the hearing.  Kirby was taken

into custody of the Grant County Sheriff for purposes of this hearing on March 18, 2008.  [Doc. 47,

Ex. A, at 3-4; Ex. B, at 15].

At the March 19 hearing, by which time Kirby was representing himself, there was some

controversy as to Kirby's legal papers.  In a *Sua Sponte* Order to Show Cause, filed in open court

on that date, Judge Jeffrey ordered as follows:

> THIS MATTER having come before the Court for hearing on
> Supplemental Information on March 19, 2008 . . . and the Court
> having ordered the following after hearing statements from defendant
> concerning the retrieval of his documents/or envelope to take to court
> from his location at the Luna County Detention Center, Satellite
> Facility.
>
> IT IS THEREFORE, ORDERED, that DAVID MIRANDA, appear
> before this Court IN PERSON, before District Judge Gary Jeffreys .
> . . to show cause, if any he has, why he should not be held in criminal
> and/or civil contempt for not retrieving defendant's documents for
> court hearing.

[Doc. 35, Att. 1; Doc. 47, Ex. B, at 15].

There is no identification on the record of David Miranda, the person to whom the Show

Cause order was directed, other than Horton's statement in his affidavit that David Miranda is not,

and never has been an employee at LCCF. [Doc. 47, Ex. C].  Horton states in his <u>Martinez</u> report,

but without any evidentiary support, that it appears David Miranda was affiliated with the Grant

County Sheriff's Department. [Doc. 47, at 6].

Another Order to Transport was entered by Judge Jeffreys in Cause No. CR-2002-0145 on

March 25, 2008.  This order directed the Sheriff of Grant County to transport Kirby from LCCF to

the Luna County Courthouse in Deming for a hearing on a Supplemental Criminal Information set

21

for April 1, 2008.  Judge Jeffreys specifically ordered that, "Richard Kirby is allowed to bring with

him **ALL DOCUMENTS** he needs for the hearing and **failure to allow him to bring those**

**documents** will result in an **Order to Show Cause to be issued against the warden of the Hobbs**

**Correctional Facility and/or the Grant County Sheriff.** [emphasis in original]." [Doc. 47, Ex. A,

at 5; Ex. B, at 14; Doc. 35, Att. 1 thereto].  Further records indicate that Kirby was taken into the

custody of the Grant County Sheriff on March 31, 2008. [Doc. 47, Ex. A, at 7; Ex. B, at ].  Kirby

does not allege that he was denied use of any legal papers with respect to the April 1, 2008 hearing.

    C. *Analysis*

In his Martinez report, Horton raises three arguments in support of his request for summary

judgment: (1) Kirby did not exhaust his administrative remedies with respect to the claim that

Horton refused to allow him to take his legal papers to court on the two occasions cited; (2) Kirby's

claim for damages for emotional harm is not cognizable under the Prison Litigation Reform Act

("PLRA") without a prior showing of physical injury; and (3) Kirby cannot show that Defendant

Horton was personally involved in the alleged constitutional violations.

The PLRA provides that:  "No action shall be brought with respect to prison conditions under

section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other

correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C.

§ 1997e(a).  Exhaustion is mandatory, and the remedies to be exhausted need only be "available";

there is no additional requirement, as in the past, that they meet federal standards nor that they be

"plain, speedy and effective."  Booth v. Churner, 532 U.S. 731, 739 (2001).  An inmate seeking

money damages must first exhaust administrative remedies before he can file suit, even if the

applicable prison grievance system does not provide monetary relief.  Id., at 734.

The general rule of exhaustion provides benefits beyond merely weeding out frivolous suits:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation.  In other instances, the internal review might "filter out some frivolous claims."  And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

Porter v. Nussle, 534 U.S. 516, 524-25 (2002) (internal citations omitted).

Horton asserts in his Martinez report that, at all relevant times, LCCF had in place policies and procedures for inmate grievances. [Doc. 47, at 6; and Exs. E and F thereto].  Lindsey Brininstool, the custodian of inmate grievance records at LCCF, states in her affidavit that Kirby filed numerous informal complaints and grievances while he was housed at LCCF. [Doc. 47, Ex. E, at 1].  She states further that Kirby did not file any grievance complaining that Horton, or any other employee of LCCF, refused to allow him to bring legal documents to any court hearing in January or March 2008. [Id.].

Kirby gives several reasons for his failure to file a grievance on this matter.  He says in his "Response to Major Horton's Answer" [Doc. 35, at 3] that:

> it is physically impossible to file a complaint when locked down in segregation in a county jail without any access to paper, forms, pencils, phone, legal materials, etc.  The return to LCCF custody was beyond the five day time frame for informal grievances.  In addition when I attempted the file the grievance officer construed the complaint was akin to 08-04-16 that has been administratively completed and referenced as 08-05-06 that is attached.

Kirby states further that "administrative remedies do not apply to an individual capacity money damage claim." [Id.].

23

First, the Court rejects Kirby's assertion that he need not exhaust administrative remedies when he is seeking monetary relief.  *See*, Booth v. Churner, at 734.

Second, the fact that Kirby did not have access to paper or pencils while he was held in the county jail under custody of the sheriff, and was returned to LCCF after expiration of the five-day deadline for filing an informal grievance, would not excuse a failure to file a complaint when he returned.  The Inmate Grievance Policy of the NMDOC provides that, before proceeding to a formal grievance, an inmate should first file an informal complaint "within five calendar days from the date of the complaint." [NMDOC Policy CD-150500, Doc. 47, Ex. F, at 9].  This language is not entirely clear, but it appears to mean that the inmate should lodge an informal complaint within five days of the incident giving rise to the complaint.  The rule is not mandatory, and the inmate is given 20 days from the date of the incident to file a formal grievance.

Third, neither Grievance No. 08-05-06, nor Informal Complaint No. 08-04-16, relates to Kirby's allegations that Defendant Horton refused to permit him to bring legal materials to court.  Each of those complaints deals with Kirby's allegation that he was transferred during pendency of an appeal.  Indeed, in No. 08-05-06 Kirby lists "date of incident" as April 10, 2008, so it could not have related to incidents involving Horton, which he alleges occurred in January and March 2008.  In No. 08-04-16, Kirby cites "date of incident" as January 17, March 10 (or 18) and April 1, 2008.  However, the complaint says nothing about a refusal by Horton to permit Kirby to bring his legal papers to court; rather, he again complains of the violation of FED. R. APP. P. 23(a) in transferring him during pendency of an appeal, a claim which has been dismissed from this case.

Although Kirby states in his Response to the Martinez report that Lindsey Brininstool's affidavit, attached to Horton's Martinez report, contains false information, he does not clarify which part of the affidavit is false but invites the Court to compare the Brininstool affidavit with the

24

attachments to his Response to Horton's Answer.  [Doc. 53, at 1, 14].  The Court has done so, and

there is nothing in those attachments which contradicts anything stated in the Brininstool affidavit.

Kirby alleges further that he did file a complaint upon his return to LCCF but it was never

addressed by LCCF officials.  He says that "[t]he informal complaint against Horton was never

logged or processed" [Doc. 53, at 5].  Even accepting this statement at face value, there is nothing

on the record to show that Kirby filed a formal grievance with respect to his complaints against

Horton.  The NMDOC Inmate Grievance Policy states that an inmate "is expected" to attempt to

resolve an area of concern informally and "should" file an informal complaint prior to instituting

the formal grievance procedures. [Doc. 47, Ex. F, at 9].  If the informal process fails to resolve the

complaint, the inmate may then proceed to file a formal grievance.

There is nothing in the Grievance Policy which would have prevented Kirby from filing a

formal grievance regarding Horton's refusal to permit him to bring legal papers to court, if the

informal process failed to provide relief.  And there is nothing on the record to indicate that Kirby

ever filed such a grievance.  He does not even allege that such a grievance was filed.  The Court

finds that Kirby failed to exhaust his remedies with respect to the complaint that Horton prevented

him from bringing his legal files to court.

In addition, there is nothing on the record connecting Horton with Kirby's problems

regarding legal files.  The state court's Show Cause order was directed to another person, David

Miranda, with no known connection to LCCF.  Furthermore, Kirby fails to establish that any lack

of legal files worked an unconstitutional deprivation of his right of access to the courts.  The issue

of lack of legal files was addressed promptly and decisively, and was resolved, by the state courts,

with no impact on Kirby's right of access.  At most, Kirby asserts delay in his criminal case.  An

inmate claiming delay as a cause of violation of this right to access the courts must allege and

demonstrate that any delay of access to the court prejudiced him in his pursuit of litigation.  Treff v. Galetka, 74 F.3d 191, 194 (10th Cir. 1996).  The electronic docket sheet for Cause No. CR-2002-0145 indicates that Kirby was a prolific filer of multitudinous motions, notices, petitions, requests, statements of fact, and other types of documents.  [Doc. 47, Ex. B].  He fails to show that he was deprived of his access to the courts by any action of Defendant Horton.

   D. *Conclusion*

   The Court determines that Defendant Horton is entitled to summary judgment in his favor, based on Kirby's failure to exhaust his prison remedies prior to bringing suit, his failure to raise a genuine issue of fact as to Defendant Horton's personal involvement in the deprivation of his legal papers for a court appearance, and his failure to demonstrate that he was prejudiced in his pursuit of litigation by any delay caused by lack of legal files.

Claim III:
Holding of Legal Mail

   Kirby alleges as "Supporting Facts" to a count of his Complaint, that a Warden Nickelson (whom he does not name as a Defendant) and Warden Janecka, (who has been dismissed as a Defendant), "held 42 pieces of legal mail" addressed by Kirby to attorneys and courts, on grounds it was not qualified legal mail.  Kirby alleges says that this mail was held for two weeks without notice, then given back to him and he had to re-mail it.  [Doc. 1, at 7].

   On March 25, 2009, the undersigned Magistrate Judge noted in Findings and Recommended Disposition [Doc. 37] on two dispositive motions filed by the named Defendants herein, that Kirby raised this claim against persons who are not parties to this action.  However, because McReynolds, in his Motion for Summary Judgment, addressed various claims regarding alleged delays in mailing

26

legal documents, the Court included the claim in its Order for <u>Martinez</u> report "in an abundance of caution." [<u>Id.</u>, at 16 & n.7].

A set of grievances and responses thereto submitted by McReynolds in his <u>Martinez</u> report reveals that Kirby is complaining of incidents occurring at LCCF in December 2007. Kirby alleges in various grievances and letters prepared in December 2007 that LCCF Finance Warden Nickelson and unnamed mail personnel violated NMDOC mail policy 40 times from December 12 to 24, 2007. He further alleges that Valerie Rogers, an employee of NMDOC, failed in her responsibility to oversee policy violations at LCCF. [Doc. 52, Ex. A, at 5-6, 13, 14]. Neither Nickelson nor Rogers was named as a Defendant in this case. Warden Janecka was named in Kirby's Complaint, but there is nothing in the record of this case that demonstrates any personal involvement by Janecka, other than as a recipient of mail sent to him by Kirby. Personal participation by a defendant is a requisite element of a claim under § 1983. <u>Mitchell v. Maynard</u>, 80 F.3d 1433, 1441 (10th Cir. 1996).

Thus, the Court recommends dismissal of this claim. Amendment of the Complaint to name new parties wold be futile, since there is no showing that the holding of Kirby's outgoing mail for 12 days in December 2007 caused actual injury to any of his litigation activities. Kirby alleges denial of access to the courts; however, simple delay in outgoing posting of mail is not sufficient to support a claim for constitutional violation. Kirby has the burden of showing that Defendants' actions amounted to active interference with his ability to prepare and file a petition, complaint, or other initial legal pleading. <u>Bounds v. Smith</u>, at 828 n.17 (1977). He has not made such a showing.

Kirby does not state with any clarity which of his legal cases was allegedly hindered by the withholding of mail; rather, he leaves it to Defendants to comb through the record for evidence that any of Kirby's cases was affected. In his <u>Martinez</u> report, McReynolds notes that Kirby refers at one point to a civil case filed in this Court and its appeal in the Tenth Circuit Court of Appeals

(Cause No. Civ. 04-844 DJS/ACT), and an action in the Fifth Circuit Court of Appeals (Cause No. 07-1126) arising in the Northern District of Texas.  Defendant McReynolds states that both of these cases were decided on the merits, and there is no indication that Kirby was denied any relief on grounds of untimely filing or other procedural issue that could be attributed to the two-week withholding of mail. [Doc. 52, at 11].  Kirby has not shown anything to the contrary.

Because Kirby has not demonstrated personal involvement by any Defendant in the alleged mail withholding, and because he has not shown relevant actual injury due to any such withholding, the Court recommends that this claim be dismissed.

Plaintiff's Motion for Additional<br>Time to Conduct Discovery

In the document submitted in response to Defendants' <u>Martinez</u> reports [Doc. 53], Kirby asks the Court to grant him a 90-day extension of time for the purpose of conducting discovery.  As Defendant Horton points out in his Response [Doc. 54] to Kirby's motion, this request falls under FED. R. CIV. P. 56(f).  That rule provides that the Court can order a continuance, following submission of a summary judgment motion, to a party who shows by affidavit that he cannot present facts essential to justify his opposition to the motion.

Considered as a Rule 56(f) motion, Kirby's request is deficient in that it is not based on a sworn affidavit setting forth with specificity the discovery that is necessary and how that discovery would assist him in overcoming Defendants' *prima facie* showing of entitlement to judgment.  "A party may not invoke Fed.R.Civ.P. 56(f) by merely asserting that discovery is incomplete or that specific facts necessary to oppose summary judgment are unavailable . . . .  Rather, the party must demonstrate precisely how additional discovery will lead to a genuine issue of material fact."  <u>Ben Ezra, Weinstein & Co. v. Am. Online, Inc.</u>, 206 F.3d 980, 987 (10th Cir.  2000).

Kirby has not made such a showing, and the Court finds that there is no fact material to the resolution of this case that could be resolved by further discovery.  Kirby's Motion for Extension of Time [Doc. 53] is denied, as set forth in a separate Order.

### Recommended Disposition

That Plaintiff's Complaint be dismissed and that this action be dismissed with prejudice.


_Lorenzo F. Garcia_
Lorenzo F. Garcia
Chief United States Magistrate Judge